UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

**CHERYL LOWE AND BRIAN ROACH,**

                        Plaintiffs,

    -against-

                                               **MEMORANDUM AND ORDER**
                                               17-CV-906 (AMD) (RML)

**THE CITY OF NEW YORK,** *et al.***,**

                        Defendants.
-----------------------------------------------------------------X

**ANN M. DONNELLY**, U.S. District Judge:

The plaintiffs brought this 42 U.S.C. §§ 1983 and 1985 action against Detective Ricardo Joseph and Sergeant Pegeen Roberto-Silva alleging that the defendants arrested them falsely during a drug raid. (ECF Nos. 1, 9.) The defendants move for summary judgment, and the plaintiffs oppose.[1] (ECF Nos. 24, 30.) For the reasons that follow, the defendants' motion is granted.

## BACKGROUND[2]

On the night of February 20, 2016, police officers executing a search warrant arrested the plaintiffs at their friend Michael DeCouteau's Brooklyn apartment for possession of a controlled substance. (ECF No. 25, Defendants' 56.1 Statement ("Def. 56.1"), ¶¶ 1-10; ECF No. 28, Plaintiffs' 56.1 Counterstatement ("Pl. 56.1"), ¶ 42.) Although the parties agree for the most part

---

[1] In May of 2019, the plaintiffs agreed to withdraw their claims against Detective Douglas Corso and Detective Katrina Forrester, and their municipal liability claims against the City of New York. (ECF No. 23.)

[2] In deciding whether summary judgment is appropriate, I must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); *Salamon v. Our Lady of Victory Hosp.*, 514 F. 3d 217, 226 (2d Cir. 2008). Unless otherwise noted, the factual background is based on my review of the entire record, including the parties' 56.1 statements. I do not consider the portions of the plaintiffs' 56.1 statement in which they "improperly interject[] arguments . . . in response to facts . . . without specifically controverting those facts." *Risco v. McHugh*, 868 F. Supp. 2d 75, 85 n.2 (S.D.N.Y. 2012).

1

about the events that followed the plaintiffs' arrests, they disagree about what led up to the arrests.

In February of 2016, the defendants received a tip from a confidential informant that DeCouteau was selling drugs from his Brooklyn apartment. (Def. 56.1 ¶ 4.) On February 17, 2016, Detective Joseph applied to the Honorable Bruce Balter of the Kings County Supreme Court for a search warrant. Citing Detective Joseph's affidavit, as well as "stenographically-recorded testimony,"[3] Judge Balter issued a "no-knock" search warrant to search DeCouteau's apartment, finding that there was "probable cause" to search for "crack cocaine" and "paraphernalia" in DeCouteau's apartment. (ECF No. 26, Ex. A.)[4] Judge Balter gave the detectives "no-knock authority"—meaning that they could enter without knocking—because the evidence sought was "easily disposed of (e.g., by being flushed down a drain)." (*Id.*)

Roach called DeCouteau on February 20, 2016, and arranged to meet him at his apartment later that day. (Def. 56.1 ¶¶ 9-11.) Lowe had never met DeCouteau before, and neither she nor Roach had ever been to his apartment. (Def. 56.1 ¶¶ 12; Pl. 56.1 ¶ 11.) The plaintiffs bought some food and arrived at DeCouteau's studio apartment later that evening. (Pl. 56.1 ¶ 11.) Another woman named Valerie was there; neither of the plaintiffs knew her. (Pl. 56.1 ¶ 14.) The apartment had just one open area that included the kitchen and bedroom; the bathroom was separate. (Pl. 56.1 ¶ 8.) Both plaintiffs say they did not see any drugs in the apartment. (ECF No. 26, Ex. B at 86:4-87:15; Ex. D at 89:14-17.) Roach said that he "wouldn't even know what [drug paraphernalia] . . . looked like;" Lowe said she had "no idea" what was on the table or in the kitchen, but that she did not see any drug paraphernalia. (ECF No. 26, Ex. B at 87:1-5; ECF No. 29-2 at 88:17-23.)

---

[3] It is not clear from the record whether Judge Balter heard testimony from the confidential informant.
[4] According to the plaintiffs, the defendants did not produce the affidavit in support of the warrant.

About thirty minutes after they arrived, police officers broke down the door and came into the apartment to execute the search warrant. (Pl. 56.1 ¶ 20.) The team included ten officers from the Brooklyn South Narcotics unit, including the two defendants—Detective Joseph and Sergeant Pegeen Roberto-Silva. (Def. 56.1 ¶¶ 21-22.)

Detective Joseph, who was the first officer to enter the apartment, saw a light on in the kitchen and people moving about the kitchen. (Def. 56.1 ¶¶ 24-25; ECF No. 26, Ex. C at 20:13-22, 21:10-25.) He also smelled smoke that was "different from [a] cigarette smell [or] . . . marijuana smell[.]" (ECF No. 26, Ex. C at 66:22-67:3.)[5] The plaintiffs were in the kitchen and the kitchen faucet was running. (*Id.* at 69:11-70:8; Ex. D at 94:23-24; Def. 56.1 ¶ 27.) According to the plaintiffs, Roach was "by the sink" getting or drinking water. (ECF No. 26, Ex. D at 94:20.)[6] Detective Joseph did not see any drugs in the sink, but thought the plaintiffs, the only people in the kitchen, might be trying to dispose of drugs down the sink. (Def. 56.1 ¶ 28.)

Officers handcuffed the plaintiffs, DeCouteau and Valerie, and brought them to the hallway while Detective Joseph searched the apartment. (Pl. 56.1 ¶ 29.) Detective Joseph found three small plastic twists of crack cocaine in a kitchen cabinet and a glass pipe with crack cocaine residue on a kitchen shelf; on the kitchen table, there was another glass pipe and two metal "push rods" with crack cocaine residue. (Def. 56.1 ¶¶ 31-38; ECF No. 26, Ex. H.)[7] There was no evidence that anyone had disposed of drugs down the sink.[8] Field tests confirmed that the bags contained crack cocaine. (Def. 56.1 ¶ 33; ECF No. 26, Ex. J.) The plaintiffs claim they do not know anything about what was in the cabinets; they theorize that "[d]ealers do not leave

---

[5] The parties do not mention or discuss this testimony in their submissions.
[6] Detective Joseph could not remember if the plaintiffs were sitting or standing by the kitchen table. (ECF No. 26, Ex. C at 70:3-5.)
[7] "Push rods" are metal rods used to push crack cocaine into a crack pipe.
[8] Police also found drugs in Valerie's purse. (ECF No. 26, Ex. C at 31:24-32:17.)

3

contrabands in open view in their apartments." (Pl. 56.1 ¶ 33.)

The plaintiffs were arrested and charged with Criminal Possession of a Controlled Substance in the Seventh Degree. (Def. 56.1 ¶ 42; ECF No. 26, Exs. F-I.) Police issued Lowe a desk appearance ticket, while Roach was held over the weekend before he was released on his own recognizance. (Def. 56.1 ¶¶ 47-51; ECF No. 26, Exs. I & K.) The plaintiffs claim that Roach was held because Detective Joseph wrote in the complaint that he lived at DeCouteau's apartment, even though Roach says he told officers he lived in Queens. (Pl. 56.1 ¶¶ 51-53.) Ultimately, the plaintiffs accepted adjournments in contemplation of dismissal. (Pl. 56.1 ¶¶ 52-53; ECF No. 26, Exs. L and M.)

## LEGAL STANDARD

Summary judgment is appropriate only if the parties' submissions, including deposition transcripts, affidavits or other documentation show that there is "no genuine dispute as to any material fact," and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The movant has the "burden of showing the absence of any genuine dispute as to a material fact[.]" *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997). A fact is "material" for the purposes of summary judgment when it "might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Barlow v. Male Geneva Police Officer Who Arrested Me on Jan. 2005*, 434 F. App'x 22, 25 (2d Cir. 2011) (citations omitted). Once the moving party has met its burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial. *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing

*Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986)).

## DISCUSSION

The plaintiffs argue that the defendants falsely arrested them and conspired to violate their rights in violation of 42 U.S.C. §§ 1983 and 1985.[9] The defendants answer that they acted reasonably, had probable cause to arrest the plaintiffs and are entitled to qualified immunity. For the reasons that follow, I grant the defendants' motion for summary judgment in its entirety.

In order to state a Section 1983 false arrest claim, the plaintiffs must allege that: (1) the defendants intended to confine them; (2) the plaintiffs were conscious of the confinement; (3) the plaintiffs did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).

Probable cause "is a complete defense" to false arrest claims. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quotation and citation omitted); *see also Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007) ("Thus, under both New York and federal law, summary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable."). A court may decide the question of probable cause as a matter of law "if there is no dispute as to the pertinent events and the knowledge of the officers." *Bishop v. City of New York*, 518 F. App'x 55, 56 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852). Probable cause requires an officer to have "'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be

---

[9] The plaintiffs appear to raise conspiracy and *respondeat superior* claims in their amended complaint, but do not address any of the defendants' arguments for summary judgment as to these remaining claims. I therefore deem these claims abandoned. *See, e.g., Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 340 (E.D.N.Y. 2006) ("Because plaintiff's opposition papers did not address defendants' motion for summary judgment on this claim, the claim is deemed abandoned and summary judgment could be granted on that basis alone.").

5

arrested.'" *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir. 2000)). Courts "look to the totality of the circumstances" in deciding whether an officer had probable cause to arrest an individual, *Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012), and "consider those facts available to the officer at the time of the arrest and immediately before it." *Caldarola v. Calabrese,* 298 F.3d 156, 162 (2d Cir. 2002) (quotation and citations omitted).

An officer is not required to consider every possible explanation for what appears to be criminal activity. "Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Wieder v. City of N.Y.*, 569 F. App'x 28, 29-30 (2d Cir. 2014) (quoting *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 128 (2d Cir. 1997)); *see also Krause v. Bennett,* 887 F.2d 362, 372 (2d Cir. 1989) (officers "are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence."). Moreover, police officers are "entitled to rely on the allegations of fellow police officers" in deciding whether they have probable cause for an arrest. *Martinez,* 202 F.3d at 634.

Both plaintiffs were arrested and charged with possession of a controlled substance in the seventh degree, under a theory of constructive possession.[10] In New York, constructive possession requires that a defendant "exercised 'dominion or control' over the property by a sufficient level of control over the area in which the contraband is found or over the person from whom the contraband is seized[.]" *People v. Manini*, 79 N.Y.2d 561, 569 (1992) (collecting

---

[10] A person is guilty of criminal possession of a controlled substance in the seventh degree "when he or she knowingly and unlawfully possesses a controlled substance[.]" N.Y. Penal Law § 220.03. Even "an unusable residue of cocaine is a controlled substance within the purview of [N.Y.P.L.] § 220.03." *People v. Mizell*, 72 N.Y.2d 651, 656 (1988).

6

cases); *see also United States v. Facen*, 812 F.3d 280, 287 (2d Cir. 2016) ("Constructive possession exists when a person has the power and intention to exercise dominion and control over an object[.]") (citation omitted). "Mere presence at the location of contraband does not establish possession." *Facen*, 812 F.3d at 287 (quotation and citation omitted). Instead, the plaintiffs' presence must be "under a particular set of circumstances" which support the inference of possession, *People v. Bundy*, 90 N.Y.2d 918, 920 (1997), such as "the presence of documents pertaining to the defendant in the same location as the narcotics, the defendant's possession of a key to the location where the drugs are found . . . whether the defendant had complete control over the narcotics," or "whether the drugs are in plain view." *Facen*, 812 F.3d at 287 (collecting cases).

Drawing all reasonable inferences in favor of the plaintiffs, as I must, on a motion for summary judgment, I find that Detective Joseph's observations gave the defendants probable cause to arrest the plaintiffs for possession of a controlled substance in the seventh degree. Many of the facts about the arrest are not in dispute. The police secured a search warrant for the apartment after learning from a confidential informant that DeCouteau was selling crack cocaine from his apartment. When Detective Joseph entered, he saw four people in the "very small" studio apartment. (Def. 56.1 ¶ 8.) The plaintiffs were in the kitchen; Lowe was sitting at the kitchen table, while Roach was by the sink. (ECF No. 29-3 at 90:4-8; Ex. D at 86:18-20.) Detective Joseph smelled smoke which he thought might be crack cocaine, because it did not smell like cigarette smoke. He also saw two glass pipes and two metal push rods on the kitchen table, as well as cocaine and additional contraband on a shelf and in a cabinet in the kitchen. The faucet was running, which led Detective Joseph to believe that the plaintiffs might be disposing of drugs down the sink. Given these circumstances—the smoke, running water, the drugs and

drug paraphernalia, all in a single room apartment—the defendants reasonably inferred that all four people had dominion and control over the contraband in the kitchen, and that there was probable cause to arrest everyone in the apartment. *See United States v. Heath*, 455 F.3d 52, 58 n.4 (2d Cir. 2006) ("those who are permitted to observe obvious criminal activity in a home are, absent indications to the contrary, likely to be complicit in the offense").

The plaintiffs admit that they were in the kitchen when police arrived, and that the faucet was running, but deny that there were drugs or drug paraphernalia in plain view. This denial alone is not sufficient to create a genuine dispute of material fact. "Once the party moving for summary judgment claims the absence of a genuine dispute of material fact, the opposing party cannot 'rely merely on allegations or denials' but instead must present specific evidence showing that there is in fact a genuine dispute." *Cole v. City of New York*, No. 10-CV-5308, 2013 WL 781640, at *7 (S.D.N.Y. Mar. 1, 2013) (quoting *Amaker v. Foley*, 274 F.3d 677, 680-81 (2d Cir. 2001)). The plaintiffs offer no such evidence. The plaintiffs deny that there were drugs or drug paraphernalia in plain view, positing that if DeCouteau was a drug dealer, he would not have kept drugs and drug paraphernalia out in the open. This speculation is not sufficient to create a factual dispute. Moreover, their deposition testimony was ambiguous. Both said that they did not remember what was on the kitchen table, and Roach specifically said he would not have recognized drug paraphernalia in any event. (ECF No. 26, Ex. B at 87:1-5.) In any event, even if the record established a material factual dispute about what the plaintiffs saw, there is no dispute about what the detective saw, which is the appropriate focus of a probable cause inquiry.[11] The plaintiffs do not deny that they were in the kitchen when police arrived, and that

---

[11] Even if the defendants had been mistaken about the circumstances underlying the plaintiffs' arrests, "an officer's mistaken belief about a circumstance can still support a probable cause determination." *Roberts v. City of New York*, 16-CV-5409, 2017 WL 4357291, at *6 (E.D.N.Y. Sept. 29, 2017) (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)), *aff'd Roberts v. Azize*, 767 F. App'x 196 (2d Cir. 2019).

there were drugs and paraphernalia in the kitchen. The plaintiffs' "asserted lack of awareness" about what was in the apartment does not preclude a finding of probable cause. *Cole*, 2013 WL 781640, at *6; *see also Heath* at 57 ("[T]here is no evidence that precautions were taken to prevent people in the house from coming across the putatively visible contraband, and from doing so in their ordinary course of their expected behavior . . . reasonably cautious police officers could have concluded that the home's adult occupants were complicit in the illegal activities involving the contraband.") Under the totality of the circumstances, the defendants acted reasonably and had probable cause to arrest the plaintiffs.

In any event, there was at a minimum arguable probable cause for the arrest, and the defendants are therefore entitled to qualified immunity. *See Kass v. City of New York*, 864 F.3d 200, 206 (2d Cir. 2017) (dismissing false arrest claims, and holding "an officer is entitled to qualified immunity from a federal false arrest and imprisonment claim if he had arguable probable cause to arrest the plaintiff for any offense, regardless of the offense with which the plaintiff was actually charged."). Police officers are immune from liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects a government actor if it was objectively reasonable to believe the conduct was lawful at the time. *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007). "The 'dispositive inquiry' is 'whether it would have been clear to a reasonable officer in the agents' position that their conduct was unlawful in the situation they confronted." *Shakir v. Stanye*, __ F. App'x __, 2020 WL 1480141, at *2 (2d Cir. Mar. 24, 2020) (summary order) (citations omitted). "Only when 'no officer of reasonable competence could have made the same choice in similar circumstances' is an officer's conduct unreasonable and undeserving of qualified immunity." *Cole*, 2013 WL

781640, at *8 (S.D.N.Y. Mar. 1, 2013) (quoting *Anthony v. City of New York*, 339 F.3d 129, 138 (2d Cir. 2003)).

That standard—that "no officer of reasonable competence" would have decided to arrest the plaintiffs—has not been established here. Putting aside the contraband on the table, the other undisputed facts gave the defendants arguable probable cause to arrest the plaintiffs. The defendants received information from a confidential informant that DeCouteau was selling crack cocaine from his apartment, and secured a search warrant based on that information. When police went into the one room apartment, Detective Joseph smelled smoke and saw the plaintiffs near where drugs and contraband were found, near a running faucet, suggesting they had tried to flush drugs down the drain. It was not unreasonable, under these circumstances, for him to conclude that the plaintiffs had constructive possession of the drugs and paraphernalia. "The very fact that courts disagree regarding what specific factual circumstances would be sufficient to find constructive possession demonstrates that the law is not well-settled. Defendants made a discretionary determination in a 'gray area,' and that kind of determination is protected by qualified immunity." *Roberts*, 2017 WL 4357291, at *8; *see also Coollick v. Hughes,* 699 F.3d 211, 221 (2d Cir. 2012) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.") (citation and quotation omitted). The defendants are therefore entitled to qualified immunity on the plaintiffs' false arrest claims.

"[T]he dismissal of [the plaintiffs'] underlying theories of liability eliminate[s] the prospect of vicarious liability." *Conte v. County of Nassau*, 596 F. App'x 1, 3 (2d Cir. 2014) (summary order) (quotations and citations omitted). Accordingly, to the extent these claims are not already deemed abandoned, the plaintiffs' remaining *respondeat superior* claims must also be dismissed.

## CONCLUSION

For the reasons explained above, the defendants' motion for summary judgment is granted and the plaintiffs' remaining claims are dismissed. The Clerk of the Court is respectfully directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED.**

                                                                 s/Ann M. Donnelly
                                                           Ann M. Donnelly
                                                           United States District Judge

Dated: Brooklyn, New York
       March 31, 2020